IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex. rel.* Ralph D. Williams, <br><br>BRINGING THIS ACTION ON BEHALF OF THE UNITED STATES OF AMERICA AND THE STATE OF GEORGIA <br><br><br>Plaintiffs and Relator; <br><br>v. <br><br><br>HEALTH MANAGEMENT ASSOCIATES, INC.; MONROE HMA, LLC d/b/a WALTON REGIONAL MEDICAL CENTER; JOHN DOE HOSPITALS AFFILIATED WITH HEALTH MANAGEMENT ASSOCIATES, INC.; <br><br>Defendants. | Civil Action No. 3:12-CV-151 (CDL) <br><br><br><br>**FILED UNDER SEAL** <br>**Pursuant to 31 U.S.C. 3730 (b)(2)** <br><br>**DO NOT PUT IN PACER OR SERVE** |

## SECOND AMENDED COMPLAINT

### Introduction

1.

This is an action brought on behalf of the United States of America and the State of Georgia by Ralph D. Williams ("Relator") against Health Management Associates, Inc.; HMA Monroe, LLC d/b/a Walton Regional Medical Center; and John Doe Hospitals affiliated with Health Management Associates, Inc. (collectively referred to as "HMA"), pursuant to the qui tam provisions of the False Claims Act, 31 U.S.C. § 3729, *et. seq.* and the Georgia Medicaid False Claims Act, O.C.G.A. 49-4-168, *et. seq.* ("Georgia

1

Medicaid FCA"). This action was originally filed on December 1, 2009 as part of a three-count complaint against HMA and other defendants. (See Civil Action No. 3:09-CV-130 (CDL)). This action was severed by Court Order dated December 3, 2012; This Second Amended Complaint is filed to conform to that Order. This Second Amended Complaint is now known as Civil Action number 3:12-CV-151 (CDL) and has an original filing date of December 1, 2009.

**Jurisdictional Statement**

2.

This court has jurisdiction over this matter pursuant to 31 U.S.C. §3730(b) and 28 U.S.C. §1331 and supplemental jurisdiction over claims arising under the Georgia Medicaid False Claims Act, as provided under 28 U.S.C. §1367(a).

3.

Plaintiff-Relator Williams is an individual and a resident of the State of Georgia.

4.

Defendant Health Management Associates, Inc. ("HMA, Inc.") is a Delaware corporation, doing business in the Middle District of Georgia. Its headquarters are located at 5811 Pelican Bay Blvd., Suite 500, Naples, FL 34108-2710. Service can be had on HMA, Inc., by serving its registered agent, CT Corporation Systems, at 1200 S. Pine Island Rd., Plantation, FL 33324.

5.

Defendant HMA Monroe, LLC d/b/a Walton Regional Medical Center in Monroe, Georgia, and is a Georgia limited liability company, with its principal office

2

located at 5811 Pelican Bay Blvd., Suite 500, Naples, FL 34108-2710. Service can be had on HMA Monroe by serving its registered agent, CT Corporation Systems, 1201 Peachtree St., Atlanta, GA 30361.

6.

Defendants John Doe Hospitals, affiliated with Health Management Associates, Inc., ("HMA John Doe Hospitals") are hospitals across the United States that are owned and operated by entities that are subsidiaries of or otherwise affiliated with and controlled by Defendant Health Management Associates, Inc.

7.

Relator Williams is an accountant with thirty years of experience in hospital management in both the for-profit and not-for-profit sectors.

8.

Between April, 2009, and October, 2009, Defendant HMA, Inc. employed Mr. Williams, as the Chief Financial Officer of Defendant HMA Monroe, LLC, d/b/a Walton Regional Medical Center ("Walton Regional") in Monroe, Georgia, with job responsibilities that brought him into regular contact with corporate level executives and personnel from other HMA affiliated hospitals across the country and HMA, Inc. Relator's job duties required that he have familiarity with HMA, Inc.'s nation-wide corporate goals, practices, policies and procedures.

9.

Defendant Walton Regional operated a seventy-seven (77) bed hospital and a fifty-

eight (58) bed nursing home in Monroe, Georgia.

10.

Defendant HMA, Inc. operates over seventy (70) hospitals across the United States, three (3) of which are in Georgia: Walton Regional in Monroe, East Georgia Regional Medical Center in Statesboro and Barrow Regional Medical Center in Winder.

11.

Defendant HMA, Inc. put in place policies and practices designed to improperly increase patient admissions of government healthcare beneficiaries regardless of medical necessity for said admissions at Defendant's Walton Regional and HMA's John Doe Hospitals. These policies and practices were utilized by Defendant HMA, Inc. in HMA hospitals across the United States.

12.

Mr. Williams's *qui tam* complaint arises under the False Claims Act, 42 U.S.C. §3729, et. seq. ("FCA") and the Georgia Medicaid False Claims Act, O.C.G.A. 49-4-168 et. seq. ("Georgia Medicaid FCA").

13.

The FCA and Georgia Medicaid FCA claims against Defendants HMA, Inc., Walton Regional and HMA John Doe Hospitals are based on the submission of false claims for payment to Medicare or Medicaid ("Government Payors") for medical services that are not medically necessary.

14.

Claims for payment related to services that are not medically necessary are not eligible for reimbursement and are false claims under the FCA and the Georgia Medicaid

FCA.

15.

Hospital providers are required to establish Utilization Review Committees to ensure they are not over utilizing hospital admissions. 42 C.F.R. §482.30. Hospitals are required as a condition of participation in the Medicare/Medicaid program to have functioning Utilization Review Committees to protect Government Payors from overutilization of inpatient services and to detect and prevent fraud and abuse. HMA's Utilization Committee was totally ineffectual in detecting or preventing fraud.

16.

Hospitals are reimbursed by Government Payors at much higher rates for medical services they render to patients that have been admitted to the hospital, as opposed to services rendered to patients treated on an outpatient or observation basis.

17.

Defendants HMA, Inc., Walton Regional and HMA John Doe Hospitals (collectively referred to as "HMA") minimize outpatient and "observation" treatment for Medicaid and Medicare beneficiaries and maximize admissions of such patients, regardless of the medical necessity for those admissions because Government Payors pay HMA more for services rendered to patients on an inpatient basis rather on an outpatient or observation basis.

18.

Defendant hospitals are required by the Medicare/Medicaid conditions of participation to ensure that services billed for Government beneficiaries are, in fact,

medically necessary.

19.

In order for an admission to be considered medically necessary, the patient must have a condition requiring treatment that can only be provided in the inpatient setting. If the patient can safely receive treatment in a less intensive setting, such as outpatient observation, the patient should not be admitted to the hospital and Medicare/Medicaid should not be billed for inpatient services.

20.

If a physician is unsure about the need for an admission or feels that a patient will respond rapidly to treatment, the patient should be placed in outpatient observation. If the physician believes that a patient is acutely ill and requires admission, these facts must be clearly documented in the patient's medical record.

21.

The use of outpatient observation instead of inpatient admission is required when the need for inpatient admission cannot be medically determined and when additional time is needed to evaluate the patient or when the physician believes the patient will respond rapidly to treatment.

22.

Medicare/Medicaid coverage for outpatient observation is limited to a 48-hour period, unless the fiscal intermediary grants an exception.

23.

Observation services are defined by the Centers for Medicare and Medicaid

Services ("CMS") and the Georgia Department of Community Health, Division of Medical Assistance ("DMA") as follows: those services furnished by a hospital/physician on a hospital's premises, including the use of a bed and at least periodic monitoring by a hospital's nursing or other staff, which are reasonable and necessary to evaluate an outpatient's condition or determine the need for a possible admission to the hospital as an inpatient. The purpose of observation is to evaluate and treat a patient's medical condition to determine if there is a need for further treatment or a need for inpatient admission. CMS Manual, Pub. 100-02; DMA Policies and Procedures for Physician Services, Part II, §903.10.

24.

Observation is an outpatient status and a physician's order must specify, "admit to observation" and be signed, dated and timed. When a patient has been in observation status for 24 hours, documentation in the progress notes must include the need to continue observation status with a plan for discharge within the next 12-24 hours or the need to convert to inpatient status, documenting the medical necessity for admission or medical stability for discharge.

25.

The average reimbursement to the hospital provider for an inpatient admission is five to six times higher than for observation reimbursement.

26.

HMA was motivated by the profits related to generating a higher volume of inpatient admissions and perpetrated frauds on the public fisc by pressuring medical staff and other

employees at HMA hospitals across the United States to increase inpatient hospital admissions.

27.

In furtherance of its fraudulent scheme, Defendant HMA, Inc. set specific corporate-wide goals for patient admissions at HMA hospitals, seeking to maximize inpatient admissions regardless of medical necessity and minimize observation status. See corporate goals for admissions, attached hereto as Exhibit A.

28.

HMA, Inc. tracked and disseminated each of its hospital's inpatient admissions versus observations and set forth a 'delinquency rate' and acuity goals for each hospital that failed to achieve the corporate goal for the percentage of various patient populations that should be admitted. See memorandum re "delinquency rates," attached hereto as Exhibit B.

29.

HMA, Inc. corporate personnel with knowledge of and responsibility for numerous HMA hospitals across the country repeatedly discussed with Relator that HMA pressured all of its hospitals to minimize the use of observation status and maximize inpatient admissions in order to increase provider reimbursement.

30.

Relator commissioned a study by a third-party expert, The Advisory Board Company out of Washington, D.C., to ascertain if Defendant Walton Regional's admissions and observations were compliant or if overutilization was demonstrated. The report showed significant overutilization of inpatient admissions and underutilization of observation

services by Defendants.

31.

When Relator showed the study referenced above to HMA's Division 3 CFO, Bob Stiekes, his response was, "burn it" and no corrective action was taken by Defendant HMA to address the overutilization of inpatient admissions. HMA terminated Relator soon after he presented the study to Mr. Stiekes.

32.

To achieve the HMA, Inc. corporate goal of increasing inpatient admissions, Defendant Walton Regional compiled and disseminated to upper management, including Relator, on a daily basis, a description of all patients that were 'only' under observation, listing patient names and symptoms. This daily regimen was intended to apply pressure to convert as many observation status patients into patient admissions as was possible in order to obtain higher reimbursement rates, regardless of medical necessity or lack thereof. See email dated April 17, 2009 from Marlene Gray, Walton Regional Director Health Information Management, with subject being "OBS Log," attached hereto as Exhibit C.

33.

Defendants' scheme to submit false claims for medically unnecessary inpatient services and their systemic overutilization of inpatient admissions has unlawfully inflated Government and private pay reimbursements, fraudulently robbing the public fisc in violation of the False Claims Act and the Georgia Medicaid FCA.

34.

This is a Civil Action brought by Relator on behalf of the United States against the Defendants pursuant to the Federal False Claims Act, 31 U.S.C. §§ 3729(a)(1) and 3730 (b),

and on behalf of the State of Georgia pursuant to the Georgia Medicaid False Claims Act, O.C.G.A. 49-4-168.

35.

The Defendants knowingly presented or caused to be presented false and fraudulent claims for payment to federally-funded health insurance programs, in violation of 31 U.S.C. §3729(a)(1) (as amended, 31 U.S.C. §3729(a)(1) (A)). Defendants systematically filed claims for inpatient admissions of Government beneficiaries where no medical necessity was present to support the billing of the Government for such inpatient admissions. A lower level of care such as outpatient service should have been provided and charged to Government Payors rather than the much higher rate claimed for inpatient admissions.

36.

The Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, made, used, caused to be made, or caused to be used, false or fraudulent records and statements to get false or fraudulent claims paid or approved, in violation of, inter alia, 31 U.S.C. §3729(a)(2) (and as amended 31 U.S.C. §3729(a)(1) (B)). From the highest management levels on down the Defendants' corporate ladders, Defendants pressured hospitals to meet corporate financial goals by admitting inpatients to the hospital regardless of how sick the patients were at the time of said inpatient admissions.

37.

In violating the False Claims Act, the Defendants acted in concert, with the specific intent of conspiring for their mutual profit and gain to the detriment of the taxpayers of the State of Georgia in violation of OCGA 49-4-168.1(a)(3) and the taxpayers of the United States, in violation of 31 U.S.C §3729(a)(3) (and as amended 31 U.S.C. §3729(a)(1) (C)).

10

38.

As a direct result of Defendants' actions, Government payors /the public fisc have been directly damaged.

WHEREFORE, Relator prays for judgment against Defendants HMA, Inc., Walton Regional and John Doe Hospitals Affiliated with HMA, Inc. as follows:

(a) Defendants be ordered to cease and desist from submitting and/or causing the submission of any more false claims or in any way from otherwise violating 31 U.S.C. §3729 *et seq.*

(b) That judgment be entered in Relator's favor and against said Defendants in the amount of each and every false or fraudulent claim and so multiplied as provided by 31 U.S.C. §3729(a), plus a civil penalty of not less than Five Thousand, Five Hundred ($5,500.00) Dollars nor more than Eleven Thousand ($11,000.00) Dollars per claim, as provided by 31 U.S.C. §3729(a), to the extent such multiplied penalties shall fairly compensate the United States of America for losses resulting from the various schemes undertaken by Defendants together with penalties for specific claims to be identified at trial after full discovery;

(c) That Relator be awarded the maximum amount allowed pursuant to the False Claims Act and the Georgia Medicaid FCA, as cited and referenced herein.

(d) That judgment be granted for Relator and the United States and against Defendants for any costs, including, but not limited to, court costs, expert fees and all attorneys' fees incurred by Relator in the prosecution of this suit;

(e)     That Relator and the United States be entitled to any and other relief that they are entitled to, whether by law or equity.

This 18th day of December, 2012.

Respectfully Submitted:

Wilbanks & Bridges, LLC

By: /s/ Marlan B. Wilbanks

Marlan B. Wilbanks

Marlan B. Wilbanks
Georgia Bar No. 758223
Tyrone M. Bridges
Georgia Bar No. 081500
Monarch Plaza
3414 Peachtree Rd., NE
Suite 1075
Atlanta, Georgia 30326
(404) 842-1075

Susan Gouinlock, Ltd., Law Offices

By: /s/ Susan S. Gouinlock

Susan S. Gouinlock
Georgia Bar No. 303217
Monarch Plaza
3414 Peachtree Rd., NE
Suite 1075
Atlanta, Georgia 30326
(404) 320-9117

Counsel for Relator